UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

DISH NETWORK L.L.C.,

                          Plaintiff,

                - against -

786 WIRELESS WORLD, INC., 786
ENTERPRISES, INC., RANA M. AFZAL, and
DOES 1-10,

                    Defendants.

-------------------------------------------------------------- x

Civil Action No. 21-cv-_____

**COMPLAINT**

Plaintiff DISH Network L.L.C. ("DISH"), by and through its undersigned attorneys, for its Complaint against 786 Wireless World, Inc., 786 Enterprises, Inc., Rana M. Afzal, and Does 1-10 (collectively the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This copyright infringement action arises out of a collection of global pirate television services that are branded to customers in the Eastern District of New York, and throughout the United States, by the names Desi TV, Desi TV Pro, Live TV, and/or Live TV Pro (the "Infringing Services").

2.     Defendants Does 1-10 (the "Doe Defendants") manage and operate the Infringing Services, and by doing so, knowingly and unlawfully transmit in the United States television channels (and the copyrighted programs on those channels) originating from India and Pakistan that are or were exclusively licensed to DISH in the United States.  Starting in June 2017, and throughout the course of DISH's sweeping, four-year investigation, DISH investigators observed the Doe Defendants repeatedly infringing DISH's exclusive rights -- without authorization from DISH -- by continuously streaming in the United States these copyrighted programs through the Infringing Services to the Doe Defendants' customers in the United States (the "Service Users").

3.    Service Users can access the Infringing Services through digital TV "set-top boxes" utilizing the Android operating system, that are also sold and marketed by the Doe Defendants through their websites.

4.    The Infringing Services deliver their infringing content to Service Users in the United States from a vast web of computer servers located around the world.  The Doe Defendants actively work to conceal their identities and to avoid copyright enforcement by regularly moving their servers to different hosting companies in different countries.  For example, as of the filing of this Complaint, the Doe Defendants operate DesiTV Pro using servers hosted in Ukraine.

5.    Defendants 786 Wireless World, Inc. and 786 Enterprises, Inc. (collectively, "786 Wireless"), and the companies' CEO, Defendant Rana M. Afzal, work hand-in-hand with the Doe Defendants to promote, sell and distribute the Infringing Services.  786 Wireless knowingly and willfully infringes DISH's exclusive rights by selling and marketing set-top boxes that are expressly promoted to be used to access the Infringing Services.  786 Wireless fulfills orders of set-top boxes that are placed on the Doe Defendants' websites, and also operates a walk-in retail operation in Brooklyn, New York, where Service Users can make direct purchases of set-top boxes pre-loaded with the Infringing Services.

6.    The Doe Defendants promote the Infringing Services on an array of platforms, including the websites www.livetvbox.org, buylivetvbox.com, and www.desiiptvhd.com,[1] as well as on Facebook, Instagram and Twitter.

7.    Defendants have demonstrated the willfulness of their copyright infringement by continuing to transmit channels that have been exclusively licensed to DISH and/or by

---

[1] Desiiptvhd.com operated at least during the period 2017-2020, but is no longer active.

continuing to promote and sell the Infringing Services, despite receiving numerous demands to cease and desist.

## THE PARTIES

8.     Plaintiff DISH is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

9.     Defendants 786 Wireless World, Inc. and 786 Enterprises, Inc. are New York corporations that share a principal place of address at 1061 Coney Island Avenue, Brooklyn, New York, 11230.  786 Wireless operates a retail storefront at that address, which is licensed by the New York City Department of Consumer Affairs to sell and repair electronics and appliances.

10.    Defendant Rana M. Afzal ("Afzal") is the Chief Executive Officer of 786 Wireless.  Upon information and belief, Mr. Afzal resides in Brooklyn, New York.

11.    The Doe Defendants are individuals or entities doing business as Desi TV, Desi TV Pro, Live TV, and/or Live TV Pro.  The Doe Defendants take elaborate steps to conceal their identifies, and consequently, DISH does not currently know the names of the Doe Defendants. The Doe Defendants transmit in the United States television channels (and the copyrighted programs on those television channels) that are or were exclusively licensed to DISH.  The Doe Defendants distribute, sell and promote the Infringing Services in the Eastern District of New York and throughout the United States.

## JURISDICTION AND VENUE

12.     DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

13.     Personal jurisdiction over Defendants 786 Wireless World, Inc. and 786 Enterprises, Inc. is proper because they are New York corporations with a shared principal place of business at 1061 Coney Island Avenue Brooklyn, New York, 11230.

14.     Personal jurisdiction over the Doe Defendants is proper because they have each purposefully directed their conduct towards, and have purposefully availed themselves of the privileges of conducting business activities within the State of New York by, among other things, transmitting, selling and supplying, and offering to transmit, sell and supply, the Infringing Services to Service Users in the Eastern District of New York, causing injury to DISH in this State and in this District.  Alternatively, to the extent any Doe Defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction, personal jurisdiction is proper because each Doe Defendant derives substantial revenue from residents of the United States as a whole, and they are therefore each subject to personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2).

15.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to DISH's claims occurred in this judicial district and under 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this judicial district.  Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## FACTUAL BACKGROUND

**A.    DISH's Copyrights**

16.    DISH is the fourth largest pay-television provider in the United States, providing copyrighted programming to millions of subscribers nationwide.  DISH is one of the largest providers of international television channels in the United States, and offers hundreds of channels in a large number of different languages.

17.    DISH has contracted for and purchased rights for the international channels distributed on its platforms from channel owners and their agents, including:  ARY Digital USA LLC; MSM Asia Limited; HUM Network Ltd.; Television Media Network (Pvt.) Ltd.; Geo USA Holdings, Inc. d/b/a Geo USA LLC; and National Communications Services (SMC-Pvt) Ltd. (collectively, the "Networks").

18.    The Networks' channels that DISH transmits, distributes and performs in the United States include:  ARY Digital; Dunya TV; Express News; Geo News; Hum Masala TV; Hum TV; Hum Sitaray; Hum World; Sony Pal; SAB; and SET (the "Protected Channels").  The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

19.    DISH entered into signed, written licensing agreements with each of the Networks granting DISH the exclusive right to transmit, distribute and publicly perform the Protected Channels and the copyrighted programs that air on the Protected Channels in the United States by means including satellite, over-the-top ("OTT"), Internet Protocol television ("IPTV"), and the internet.  Many of the program episodes that aired on the Protected Channels and for which DISH holds or held exclusive distribution and public performance rights are registered with the United States Copyright Office (the "Registered Works"). *See* **Exhibit 1** (list of 179 Registered

Works).  There are also a vast number of programs that aired on the Protected Channels, whose episodes are each copyrighted works to which DISH holds or held exclusive distribution and public performance rights and for which not all episodes have been registered with the United States Copyright Office.  *See* **Exhibit 2**.[2]

20.     Defendants have not been and currently are not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or copyrighted programs that air on those channels in the United States, and Defendants have paid no compensation to DISH in connection with their unlicensed transmission, distribution and public performance in the United States of the Protected Channels or the copyrighted programs that air on those channels.

**B.     The Doe Defendants' Use of Websites and Social Media to Promote Access to the Infringing Services**

21.     The Doe Defendants market the Infringing Services in the United States.  As of the filing of this Complaint, the primary tools used by the Doe Defendants to promote and sell the Infringing Services are the websites livetvbox.org and buylivetvbox.com.

i.     LiveTvBox.Org

22.     On the livetvbox.org website, the Doe Defendants promote and sell their set-top boxes as a package that also includes a monthly subscription to the Infringing Services.  For example, the site offers a package for $299 that "[i]ncludes 24 months membership and Global Shipping Live/Desi Pro Plus android box":[3]

---

[2] Since the programs that make up the Protected Channels are non-United States works, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.  17 U.S.C. §§ 101 and 411.  *See infra* ¶ 39.

[3] https://www.livetvbox.org/product-page/black-friday-offer-live-tv-pro-8k-android-2-yr-offer



23.     The Doe Defendants also offer subscription renewals for DesiTV and Live TV

(without the set-top box)— which they market as "Recharge"—through the livetvbox.org

website:[4]

---

[4] https://www.livetvbox.org/product-page/new-yr-offer-desi-tv-1-year-membership-subscription-renewal; https://www.livetvbox.org/product-page/live-tv-box-1-year-membership-subscription-renewal





ii.    BuyLiveTvBox.com

24.    The Doe Defendants also promote and sell the same set-top boxes, preloaded with

the Infringing Services, on the website www.buylivetvbox.com, which states on its homepage

that the Service Users can have a "real HD experience.  Instantly enjoy hundreds of 8K/4K.

UHD HD quality channels."  As reflected below, the website also displays the logos of many of

the Protected Channels:



25.     The Doe Defendants state on the homepage of buylivetvbox.com that the Infringing Services provide access to channels from India and Pakistan, and that they have "10 years of experience satisfying millions of subscribers around the globe":



### iii.     Social Media

26.     As illustrated by the screenshots below, the Doe Defendants also promote the Infringing Services on Facebook (using the account name Live TV Box 8k – Unlimited Entertainment);[5] Twitter (using the handle @live_8k);[6] and Instagram (using the handle livetvhybrid)[7]:

---

[5] https://www.facebook.com/pages/category/TV-Channel/Live-Tv-Box-8k-Unlimited-Entertainment-100778678316929/

[6] https://twitter.com/live_8k?lang=en

[7] https://www.instagram.com/livetvhybrid/?hl=en







## C.     786 Wireless and Afzal Promote and Sell the Infringing Services

27.     786 Wireless and Afzal actively promote and sell set-top boxes that come pre-loaded with the Infringing Services.  Beginning in 2017, DISH investigators visited 786 Wireless' retail store at 1061 Coney Island Avenue on four occasions and, each time, the investigators observed set-top boxes pre-loaded with the Infringing Services available for sale. In addition to selling the Infringing Services directly to Service Users from their store in Brooklyn, 786 Wireless also fulfills orders made on the Doe Defendants' websites and ships set-top boxes pre-loaded with the Infringing Services to Service Users throughout the United States.

28.     As set forth below, DISH investigators purchased set-top boxes pre-loaded with the Infringing Services from 786 Wireless on two occasions:  once through the Doe Defendants' website www.desiiptvhd.com, and once directly from 786 Wireless' retail location in Brooklyn.

**D.     DISH's Monitoring of Defendants' Infringing Activity in the United States**

29.     Starting in June 2017, DISH investigators have used set-top boxes preloaded with the Infringing Services to observe Defendants repeatedly infringing DISH's exclusive rights by continuously streaming and/or promoting the Infringing Services – including the Protected Channels exclusively licensed to DISH – in the United States.

30.     In 2017, DISH investigators purchased from the website www.desiiptvhd.com a set-top boxes pre-loaded with the Infringing Services.  As set forth below, this box was then used by the DISH investigators to monitor the Infringing Services.  For this transaction, the Doe Defendants directed DISH investigators to make a payment through PayPal to a PayPal account associated with the email address info@aeconnections.com.  The set-top box was subsequently shipped to DISH investigators with a return address of 150 Clover Hollow Road, Easton, Pennsylvania, 18045.  A search of Pennsylvania state records indicates that this street address is the registered address of A&E Connections LLC, a Pennsylvania limited liability company. DISH investigators subsequently connected the set-top-box to the Internet and were able to repeatedly access the Infringing Services.

31.     In 2020, DISH investigators made another purchase from the website www.desiiptvhd.com.  For this purchase, DISH investigators paid $250 for a "Desi TV Pro" set-top box and a two-year subscription to the Infringing Services.  The payment was again made via PayPal to a PayPal account holder named "GR8IPTVs," which was associated with the same email address associated with A&E Connections (info@aeconnections.com).  After the payment

was made, the DISH investigators received in the mail a package containing the set-top box they

purchased (bearing the brand name X96 mini).  The return address on the package containing the

set-top box indicated that it had been shipped by 786 Wireless:



**Image of package received form 786 Wireless after 2020 purchase from desiiptvhd.com**.

DISH investigators subsequently connected the set-top box to the Internet and were able to

repeatedly access the Infringing Services.

32.     In 2021, DISH investigators made an additional purchase from the Doe

Defendants of a set-top box that was promoted to access the Infringing Services.  This purchase

was made from the website www.livetvbox.org.  DISH investigators paid $299, again through

PayPal, for a "Live TV Pro 8K" set-top box with a 24-month subscription to the Infringing

Services.  After selecting this purchase option on the website, a DISH investigator received a

PayPal invoice from a PayPal account holder named "Rajbir Girn," using the email address

rajie_89@hotmail.com.  The investigator completed the payment and several days later received

the set-top box in a package with a return address indicating that it was sent by "Satbir Gim", 18 Steamdale Grove, Warriewood 2102, Australia.  DISH investigators subsequently connected the set-top-box to the Internet and were able to repeatedly access the Infringing Services.

33.    In July 2021, DISH investigators visited 786 Wireless in-person and purchased a "DesiTV Pro+" set-top box, pre-loaded with DesiTV, for $225.00 plus tax.  A DISH investigator connected the box to his laptop computer and was able to access the Infringing Services, as illustrated by the screenshots below:





34.    During the course of monitoring the Infringing Services, DISH investigators have observed each of the Protected Channels being streamed by the Doe Defendants on multiple occasions.  For example:

     a.    ARY Digital was observed on the Infringing Services 43 times between August 2017 and September 2021.

     b.    Dunya TV was observed on the Infringing Services 37 times between February 2018 and September 2021.

     c.    Express News was observed on the Infringing Services 47 times between August 2017 and September 2021.

  d. Geo News was observed on the Infringing Services 44 times between August 2017 and September 2021.

  e. Hum Masala TV was observed on the Infringing Services 41 times between August 2017 and September 2021.

  f. Hum TV was observed on the Infringing Services 42 times between August 2017 and September 2021.

  g. Hum Sitaray was observed on the Infringing Services 37 times between August 2017 and September 2021.

  h. Hum World was observed on the Infringing Services 19 times between September 2017 and May 2021.

  i. Sony Pal was observed on the Infringing Services 17 times between September 2019 and September 2021.

  j. SAB was observed on the Infringing Services 42 times between September 2017 and September 2021.

  k. SET was observed on the Infringing Services 40 times between August 2017 and September 2021.

  35. Based on DISH's investigation, it is clear that the Doe Defendants have committed and continue to commit massive infringement of DISH's exclusive rights in the copyrighted programs that make up the Protected Channels by continuously transmitting, publicly performing and distributing the Protected Channels in the United States without permission from DISH.  Defendants' continuous and unauthorized transmission, distribution and public performance of the Protected Channels constitutes an infringement not only of DISH's rights in the Registered Works listed in Exhibit 1, but also an infringement of DISH's exclusive

rights with respect to additional episodes of the copyrighted programs that make up the Protected

Channels, including but not limited to episodes of the programs listed in Exhibit 2.

**E.     Defendants' Knowledge of Infringing Activity**

36.     The Doe Defendants have actual knowledge that their transmission of the

Protected Channels in the United States by way of the Infringing Services infringes DISH's

copyrights.  Between March 2017 and the filing of this Complaint, DISH sent at least 63 separate

cease and desist notices to email addresses used by the Doe Defendants (suport@desiiptvhd.com

and support@desiiptv.com).  The Doe Defendants ignored DISH's cease and desist notices.  In

addition, DISH also sent more than 139 additional cease and desist notices to vendors used by

the Doe Defendants to distribute and publicly perform the Infringing Services, including hosting

providers that have maintained the various servers used to store and transmit the copyrighted

programs that make up the Protected Channels.  In some instances, the hosting providers who

received these cease and desist notices removed the infringing content, but the Doe Defendants

intentionally interfered with DISH's takedown efforts by, for example, transmitting the Protected

Channels from different hosting providers.

37.     786 Wireless and Afzal also have actual knowledge that their promotion and sale

of the Infringing Services infringes DISH's exclusive rights to distribute and publicly perform

the Protected Channels.  DISH sent cease and desist notices to 786 Wireless in March 2017,

May 2018, and April 2021, demanding that 786 Wireless cease distribution, sale and promotion

of all services that infringe DISH's exclusive rights, including the Infringing Services.

786 Wireless and Afzal ignored DISH's cease and desist notices.

## FIRST CAUSE OF ACTION
## DIRECT COPYRIGHT INFRINGEMENT

38.     DISH repeats and realleges the allegations in paragraphs 1-37.

39.     DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds, or held during the relevant time period, the exclusive rights to transmit, distribute and publicly perform in the United States, by means including satellite, OTT, IPTV, and the internet, the programs that make up the Protected Channels.

40.     The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. DISH's copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including Pakistan and India, where the programs were authored and first published.  Under 17 U.S.C. §§ 101 and 411, the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.  Nonetheless, as shown on Exhibit 1, several episodes from programs that appear on the Protected Channels have been registered with the United States Copyright Office.

41.     Without permission from DISH, the Doe Defendants infringe DISH's exclusive rights in the copyrighted programs that make up the Protected Channels by transmitting those copyrighted programs through the Infringing Services (using servers controlled by the Doe Defendants) to Service Users in the United States.

42.     By transmitting the copyrighted programs through the Infringing Services to Service Users in the United States, the Doe Defendants distribute and publicly perform the

Protected Channels and the copyrighted programs that make up the Protected Channels without authorization from DISH, thereby infringing DISH's exclusive rights under 17 U.S.C. § 106.

43.     The Doe Defendants have and had actual knowledge that their actions infringe DISH's exclusive rights to distribute and publicly perform the Protected Channels and the copyrighted programs that make up the Protected Channels.

44.     The infringement of DISH's rights in each copyrighted program constitutes a separate and distinct act of copyright infringement.

45.     The Doe Defendants are jointly and severally liable for each act of infringement described above because they personally directed, authorized, supervised, or participated in, and financially benefited from such infringing conduct as alleged herein.

46.     The Doe Defendants' actions were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH.

47.     Unless enjoined by the Court, the Doe Defendants will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## SECOND CAUSE OF ACTION
## SECONDARY LIABILITY FOR COPYRIGHT INFRINGEMENT

48.     DISH repeats and realleges the allegations in paragraphs 1-47.

49.     As set forth above, DISH's exclusive rights to distribute and publicly perform the Protected Channels and copyrighted programs that make up the Protected Channels in the United States are directly infringed by the unauthorized transmission, distribution and public performance of these programs to Service Users in the United States by certain of the Doe Defendants, and other currently unknown third parties.

50.     This direct infringement is knowingly facilitated and enabled by other Doe Defendants and by 786 Wireless and Afzal (collectively, the "Secondary Infringers"), who encourage and materially contribute to the direct infringement of DISH's exclusive rights under 17 U.S.C. § 106 by, among other things, facilitating access by Service Users in the United States to the Protected Channels and the copyrighted programs that make up the Protected Channels, despite the Secondary Infringers' ability to prevent such access.  The Secondary Infringers also induce the infringement of DISH's exclusive rights by, among other things, creating the audience for that infringement in the United States.

51.     The Secondary Infringers intend that the Infringing Services be used by Service Users in the United States to access the Protected Channels and the copyrighted programs that make up the Protected Channels, and they promote, encourage, and facilitate infringement of DISH's exclusive rights by, among other things, selling and promoting set-top boxes that are used to access the Protected Channels through the Infringing Services.

52.     The Secondary Infringers have the right and ability to supervise the infringing activity set forth above, as well as an obvious and direct financial interest in exploitation of the Protected Channels and the copyrighted programs that air on the Protected Channels.  Despite actual knowledge that the transmission of the Protected Channels and the copyrighted programs that make up the Protected Channels to Service Users in the United States infringes DISH's exclusive rights under 17 U.S.C. § 106, the Secondary Infringers have declined to exercise their right and ability to stop this infringing activity.

53.     The Secondary Infringers could have taken simple measures to prevent infringement of DISH's copyrights when they received notices of infringement from DISH, such as ensuring that their goods and services were not used to access the Protected Channels.  The

Secondary Infringers could have also blocked the Infringing Services from accessing servers and

URLs that were identified to be streaming the Protected Channels or the copyrighted content that

airs on the Protected Channels.  The Secondary Infringers could have stopped promoting and

selling the Infringing Services, but they failed to do so.

54.     The Secondary Infringers' actions are willful, malicious, intentional, and

purposeful, and in disregard of and with indifference to the rights of DISH.

55.     Unless enjoined by the Court, the Secondary Infringers will continue to engage in

acts causing substantial and irreparable injury to DISH that includes damage to its reputation,

loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant judgement in favor of Plaintiff and

against Defendants as follows:

a)     Permanently enjoining Defendants and their officers, agents, servants, and

employees, and all those acting in active concert or participation with them, from (i) distributing,

publicly performing, and/or in any way transmitting television programming in which DISH

holds exclusive rights, including certain of the Protected Channels and the programs that make

up those Protected Channels; (ii) inducing, encouraging, causing, facilitating, and/or materially

contributing to the unauthorized, distribution, public performance, and/or transmission by others

of the programs that make up the Protected Channels in which DISH holds exclusive rights; (iii)

distributing, selling, advertising, marketing, or promoting the Infringing Services, or any other

service that contains, connects to, offers for download, transmits, assists in the transmission of,

streams, hosts, provides access to, or otherwise distributes or publicly performs, or displays

directly or indirectly, by means of any device or process, one or more of the programs that make

up the Protected Channels in which DISH holds exclusive rights; or (iv) enabling, assisting or consulting with other persons or entities to do any of the activities described in (i)-(iii) above, including by selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of their infringing operations;

b)       Permanently enjoining 786 Wireless and Azfal from distributing, providing, promoting and/or selling set-top boxes and services that distribute or publicly perform the Protected Channels or content that airs on the Protected Channels in the United States or otherwise provide access to users in the United States to the Protected Channels or content that airs on the Protected Channels;

c)       For the 179 Registered Works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or the Defendants' profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b);

d)       For unregistered works, an award of Defendants' profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b);

e)       Awarding DISH its costs of prosecuting this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

f)       Awarding DISH prejudgment interest at the highest legal rate allowed under law;

g)       Directing Defendants to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which they have complied with the Judgment of the Court; and

h)      Awarding DISH such other and further relief as this Court deems just, proper,

and equitable.

Dated:  October 14, 2021

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP

By:      */s/ Robert D. Balin*

Robert D. Balin
Adam I. Rich
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel. 212.489.8230
Email:  robertbalin@dwt.com
            adamrich@dwt.com

*Attorneys for Plaintiff DISH*
*Network L.L.C.*

25