UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DISH NETWORK L.L.C.,

                  Plaintiff,

     -against-

786 WIRELESS WORLD, INC., 786
ENTERPRISES, INC., ADEEL HUSSAIN (aka
ADIL HUSSAIN), RANA M. AFZAL,
SUSHMA SHARMA (aka SUDHMA
SHARMA), RAJESH VAIDYA (aka OMER
MASSOD), SATBIR GIRN, RAJBIR GIRN,
RAJKIRAN SINGH (aka SAJAN SINGH),
KHIZER FAROOQ, and DOE DEFENDANTS
1-10,

                 Defendants.
--------------------------------------------------------X

REPORT AND
RECOMMENDATION
21 CV 5730 (AMD)(RML)

LEVY, United States Magistrate Judge:

        By order dated June 20, 2023, the Honorable Ann M. Donnelly, United States

District Judge, referred plaintiff's motion for a default judgment and permanent injunction to me

for report and recommendation.  For the reasons stated below, I respectfully recommend that

plaintiff's motion be granted.

## BACKGROUND

        Plaintiff DISH Network L.L.C. ("plaintiff" or "DISH"), a pay-television provider,

commenced this copyright infringement action on October 14, 2021 against defendants 786

Wireless World, Inc., 786 Enterprises, Inc., and Rana M. Afzal.  Those defendants answered the

complaint in February 2022.  (See Answer, filed Feb. 8, 2022, Dkt. No. 21.)  On consent,

plaintiff filed an amended complaint naming additional defendants on November 7, 2022, and

defendants 786 Wireless World, Inc., 786 Enterprises, Inc., Adeel Hussain and Rana M. Afzal

(collectively, the "786 Defendants") filed an answer on November 29, 2022.  (See First

Amended Complaint, dated Nov. 7, 2022 ("Am. Compl."), Dkt. No. 30; Answer, dated Nov. 28, 2022, Dkt. No. 35.)  Defendants Sushma Sharma (a.k.a. Sudhma Sharma), Rajesh Vaidya (a.k.a. Omer Massod), Satbir Girn, Rajbir Girn, Rajkiran Singh (a.k.a. Sajan Singh), and Khizer Farooq (the "Foreign Defendants," and together with the 786 Defendants, "defendants") failed to answer or move with respect to the amended complaint, and plaintiff obtained a Clerk's Certificate of Default with respect to the Foreign Defendants.  (See Clerk's Entry of Default, dated Jan. 12, 2023, Dkt. No. 46.)

The Amended Complaint alleges that defendants intercept television programming originating in India and Pakistan and then provide that pirated programming, without authorization, to viewers via set-top boxes, or other devices.  (Am. Compl. ¶¶ 1-3.) Plaintiff alleges that since at least 2017, defendants have continuously committed large-scale copyright infringement in the United States by knowingly and unlawfully transmitting and distributing television channels, and the copyrighted programs on those channels, that are or were licensed exclusively to DISH in the United States.  (Id. ¶ 40.)  Those global pirate television services are branded in this district and throughout the United States by the names Desi TV, Desi TV Pro, Live TV, Live TV Pro and/or LiveTV Pro+ (the "Infringing Services"). (Id. ¶ 1.)  According to plaintiff, the Foreign Defendants work closely with the 786 Defendants, who operate a retail store on Coney Island Avenue in Brooklyn, New York, to promote and sell subscriptions to the infringing television services, as well as the Android-based set-top boxes that are marketed and sold to customers in the United States (the "Service Users") for the purpose of accessing those infringing services.  (Id. ¶¶ 3, 6, 12.)

After the 786 Defendants failed to participate in discovery or communicate with their attorney, I granted defense counsel's motion to withdraw and recommended that plaintiff's

motion for a default judgment under Rule 37 of the Federal Rules of Civil Procedure be granted. (See Order and Report and Recommendation, dated Apr. 25, 2023, Dkt. No. 52.)  Judge Donnelly adopted that Report and Recommendation and directed plaintiff to file a submission detailing the relief it requests from the defaulting defendants.  (See Order Adopting Report and Recommendation, dated May 17, 2023, Dkt, No. 54.)  It did so on June 16, 2023.  (See Notice of Motion for Default Judgment and Permanent Injunction, dated June 16, 2023, Dkt. No. 56; Memorandum of Law in Support of DISH Network L.L.C.'s Motion for Default Judgment and Permanent Injunction, dated June 16, 2023 ("Pl.'s Mem."), Dkt. No. 56-1; Declaration of Robert D. Balin, Esq., dated June 16, 2023 ("Balin Decl."), Dkt. No. 56-2.)  Judge Donnelly referred plaintiff's application to me.  (See Order Respectfully Referring Motion, dated June 20, 2023.)

Plaintiff seeks: (i) a default judgment against the Foreign Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b); (ii) an award of statutory damages pursuant to 17 U.S.C. § 504 in the amount of $26,850,000, jointly and severally against all of the defendants; and (iii) a permanent injunction pursuant to 17 U.S.C. § 502.  (Pl.'s Mem. at 1.)  I will address each request in turn.

A.  Default Judgment Against the Foreign Defendants

According to the Amended Complaint, the Foreign Defendants manage and operate the Infringing Services.  (Am. Compl. ¶ 2.)  Defendants Sharma, Satbir Girn, Rajbir Girn and Singh are based in Australia.  (Id. ¶¶ 9, 11, 16.)  Defendant Vaidya resides in Sweden.  (Am. Compl. ¶ 10.)  Defendant Farooq is based in the United Arab Emirates.  (Id. ¶ 17.)  All of the Foreign Defendants were properly served (see Proof of Service, dated Dec. 7, 2022, Dkt. No. 44), and the Clerk of the Court noted their defaults.  (See Certificate of Default, dated Jan. 12, 2023, Dkt. No. 46.)  The Amended Complaint asserts two causes of action against the Foreign

Defendants: direct copyright infringement against defendants Sharma, Vaidya, Satbir Girn, and Singh (id. ¶¶ 54-63), and contributory copyright infringement against defendants Rajbir Girn and Farooq (id. ¶¶ 64–74).

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010). In this case, the court has subject matter jurisdiction over DISH's claims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* (Am. Compl. ¶ 19.) Personal jurisdiction over the Foreign Defendants is proper because they have each conducted business activities within the State of New York by, among other things, transmitting and selling the Infringing Services in this district and causing injury to DISH in this district. (Id. ¶ 24.) Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400. (Id. ¶ 25.)

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. See Columbia Pictures Indus., Inc. v. King, No. 08 CV 4461, 2010 WL 1221457, at *1 (E.D.N.Y. Mar. 29, 2010). First, under Rule 55(a), the Clerk of the Court must enter a notation of default, as it has done here. Second, upon obtaining a Clerk's Certificate of Default, "a plaintiff must next seek a judgment by default under Rule 55(b)." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).

Following a default, all factual allegations in the complaint, except those pertaining to the amount of damages, must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993). A defendant's default is deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006). "Additionally, although a plaintiff seeking to recover damages against a

defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (i) determined the proper rule for calculating damages on the claim, and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment." Langenberg v. Sofair, No. 03 CV 8339, 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006) (internal citations omitted).

The Copyright Act generally provides a copyright holder with exclusive rights to copy, reproduce, or otherwise distribute a protected work. 17 U.S.C. § 106; see also Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 668 (2014) ("The Copyright Act . . . grants copyright protection to original works of authorship."). The "principle purpose of the Copyright Act is to encourage the origination of creative works by attaching enforceable property rights to them." Matthew Bender & Co. v. W. Pub. Co., 240 F.3d 116, 122 (2d Cir. 2001). "To prove a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." Urbont v. Sony Music Entm't, 831 F.3d 80, 88 (2d Cir. 2016).

Here, DISH contracted for and purchased rights for the international channels distributed on its platforms from channel owners and their agents, including ARY Digital USA LLC; MSM Asia Limited; HUM Network Ltd.; Television Media Network (Pvt.) Ltd.; Geo USA Holdings, Inc. d/b/a Geo USA LLC; and National Communications Services (SMC-Pvt) Ltd. (collectively, the "Networks"). (Declaration of Elizabeth Riemersma, dated June 14, 2023 ("Riemersma Decl."), Dkt. No. 56-9, ¶ 2; Am. Compl. ¶ 27.) The Networks' channels that DISH transmits, distributes, and performs in the United States include: ARY Digital; Dunya TV; Express News; Geo News; Hum Masala TV; Hum TV; Hum Sitaray; Hum World; Sony Pal; SAB; and SET (the "Protected Channels"). (Riemersma Decl. ¶ 3; Am. Compl. ¶ 28.) The

Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment. (Am. Compl. ¶ 28.) DISH holds or has held the exclusive rights to distribute and publicly perform in the United States the copyrighted works that are on the Protected Channels by means including satellite, OTT, IPTV, and the internet, pursuant to signed, written agreements with the Networks. (Riemersma Decl. ¶ 3; Am. Compl. ¶ 29.) As the exclusive licensee of these distribution and public performance rights, DISH has an ownership interest in these copyrights and is entitled to sue for infringement. See 17 U.S.C. § 501(b); see also Davis v. Blige, 505 F.3d 90, 99-100 n.10 (2d Cir. 2007) ("[E]xclusive licenses are recognized as a type of an ownership interest . . . . [and] [e]xclusive licensees may sue without joining the copyright owners.") (citations omitted). DISH's copyright ownership is therefore adequately pleaded, and since the Foreign Defendants have defaulted, "this presumption of validity over Plaintiffs' copyrights remains unrebutted." TVB Holdings (USA), Inc. v. HTV Int'l Ltd., No. 16 CV 1489, 2018 WL 7076022, at *4 (E.D.N.Y. Mar. 9, 2018) (granting DISH's motion for default judgment and finding that DISH established copyright ownership by pleading that it is a party to license agreements granting it exclusive rights to the infringed channels).

Moreover, the Copyright Act provides protection to non-United States works if: "(1) on the date of first publication, one or more of the authors . . . is a national, domiciliary, or sovereign authority of a treaty party . . .; or (2) the work is first published . . . in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b). The works that air on the Protected Channels were authored and first published in India and Pakistan. (Am. Compl. ¶¶ 2, 56.) These nations are both parties to a copyright treaty adhered to by the United States, the Berne Convention for the Protection of Literary and Artistic Works, and therefore each is a

"treaty party" under § 104(b).  17 U.S.C. § 101; United States Copyright Office, Circular 38(a),

International Copyright Relations of the United States, available at:

www.copyright.gov/circs/circ38a.pdf.  The works at issue thus satisfy the requirements of §

104(b) for protection under the Copyright Act.

    DISH's copyrighted works need not be registered with the U.S. Copyright Office

to be protected, as registration is only necessary for a "United States work." 17 U.S.C. § 411(a).

A work first published in a foreign nation that is a treaty party is not a "United States work."  See

id. § 101 (defining the term as a work first published in the United States, simultaneously in the

United States and another place, or in a foreign nation not a treaty party); see also Chiykowski v.

Goldner, No. 19 CV 2272, 2020 WL 2834225, at *2-3 (S.D.N.Y. May 31, 2020) (collecting

cases).  Nonetheless, 179 of DISH's copyrighted works (the "Registered Works") that were

infringed by defendants are registered with the U.S. Copyright Office, which creates a

presumption as to ownership and validity.  (Am. Compl., Ex. 1); see 17 U.S.C. § 401(c); Urbont,

831 F.3d at 88-89 (timely obtained certificate of registration "constitutes prima facie evidence of

the validity of the copyright").[1]  Therefore, the first element of DISH's copyright infringement

claim is sufficiently pleaded.

    The second element of DISH's claim for copyright infringement requires

"copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel.

---

[1]  "[W]orks first published outside the United States in a foreign country that is a signatory to the Berne Convention—are exempt" from the statutory requirement that a work be registered before an infringement action is commenced.  DigitAlb, Sh.a v. Setplex, LLC, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018) (citing 17 U.S.C. § 411(a)).  Since the works aired on the Protected Channels were all published originally in India or Pakistan (both Berne Convention members), registration with the Copyright Office is not a prerequisite to an infringement action here.  See Chiykowski, 2020 WL 2834225, at *2-3 (collecting cases).

Serv. Co., 499 U.S. 340, 361 (1991).  The term "copying" means to violate one of the exclusive rights granted to copyright owners in 17 U.S.C. § 106, which includes the right to distribute and publicly perform copyrighted material.  See Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010).  Here, the Amended Complaint alleges that defendants Sharma, Vaidya, Satbir Girn, and Singh captured broadcasts or streams of the Protected Channels, transferred them to one or more internet servers that they controlled and maintained, and then transmitted the Protected Channels and the copyrighted programs on those Protected Channels to Service Users without authorization from DISH.  (Am. Compl. ¶¶ 2-5, 30, 34-36, 54-63.)  Furthermore, discovery obtained by DISH from third-party service providers revealed additional, specific steps taken by each of these defendants to help manage and operate the Infringing Services.  For example: (1) defendants Sharma and Singh registered the domain name for 3mlive.com, which is used to point to the main server used by the Infringing Services (id. ¶ 9), (2) defendant Vaidya actively manages the servers used by the Infringing Services in coordination with a third-party service provider called Imperva (id. ¶ 10), and (3) defendant Satbir Girn uses his personal email address as the recovery email for the Infringing Services' primary email account, liveboxtvhd@gmail.com, and personally ships, and signs the receipts for, the set-top boxes used to access the Infringing Services, after the boxes are ordered by Service Users on the Infringing Services' websites (id. ¶ 46)  Taken together, these allegations establish that defendants Sharma, Vaidya, Satbir Girn, and Singh directly infringed DISH's exclusive rights to publicly perform in the United States the Protected Channels and the copyrighted programs on those Protected Channels.  See 17 U.S.C. § 106; see also Am. Broad. Cos. v. Aereo, Inc., 573 U.S. 431, 451 (2014) (holding that provider of centralized equipment used to stream broadcast programming to its subscribers infringed content owners' right of public performance); DISH Network L.L.C. v.

8

Kumar, No. 21 CV 6730, 2022 WL 5108085, at *2-3 (S.D.N.Y. Oct. 4, 2022) (holding operators of a similar pirate television service liable for direct infringement of DISH's exclusive rights).

The Amended Complaint also establishes that defendants Rajbir Girn and Farooq are liable for contributory copyright infringement.  (See Am. Compl. ¶¶ 16, 17, 64-74.)  An individual may be liable for copyright infringement either directly, through his or her own infringing actions, or through a form of secondary liability.  See Metro-Goldwyn-Mayer Studios Inc. v. Groskter, Ltd., 545 U.S. 913, 930 (2005).  Contributory liability occurs when a defendant "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another."  Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) (internal footnote omitted); see also Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp., 66 F. Supp. 2d 454, 462 (E.D.N.Y. 1999) ("[D]efendant can be liable for contributory infringement, even for acts committed outside the United States . . . .").  Liability for contributory infringement is "predicated upon 'the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor.'"  Gershwin Publ'g, 443 F.2d at 1162.  Two types of activity generally lead to contributory liability: (1) "personal conduct that encourages or assists the infringement;" or (2) "provision of machinery or goods that facilitate the infringement."  Matthew Bender & Co., Inc. v. West Pub. Co., 158 F. 3d 693, 706 (2d Cir. 1998).

The well-pleaded allegations in the Amended Complaint establish each element of contributory infringement as to defendants Rajbir Girn and Farooq.  First, each had actual knowledge of their infringement, because they received numerous cease-and-desist notices from

DISH.[2]  (Am. Compl. ¶ 51; Riemersma Decl. ¶ 7.)  Moreover, the fact that defendants Rajbir Girn and Farooq took elaborate steps to evade detection provides additional evidence that their infringement was knowing and willful.  See <u>N.A.S. Import, Corp. v. Chenson Enters., Inc.</u>, 968 F.2d 250, 252 (2d Cir. 1992) (knowledge "need not be proven directly but may be inferred from the defendant's conduct").  Second, plaintiff clearly alleges that defendants Rajbir Girn and Farooq materially contributed to the direct infringement described above by working in concert with defendants Sharma, Vaidya, Satbir Girn, and Singh to sell and distribute set-top boxes used for the sole purpose of accessing the Infringing Services.  (Am. Compl. ¶¶ 16-17, 68-69); <u>see TVB Holdings (USA), Inc.</u>, 2018 WL 7076022, at *5 (material contribution prong is met by distribution of devices used to access infringing services); <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146, 1172 (9th Cir. 2007) ("assist[ing] a worldwide audience of users to access infringing materials" constitutes material contribution); <u>Gershwin Publ'g</u>, 443 F.2d at 1163 (shipment of infringing devices supports a finding of contributory liability).  I therefore respectfully recommend that plaintiff's motion for default judgment be granted against each of the Foreign Defendants as to Counts One and Two of the Amended Complaint.

---

[2]  DISH sent at least sixty-three cease-and-desist notices to email addresses used by the Foreign Defendants.  (Am. Compl. ¶ 51; Riemersma Decl. ¶ 7 & Ex. A.)  In addition, DISH sent more than 139 cease-and-desist notices to vendors used by the Foreign Defendants to provide the Infringing Services, including hosting providers that have maintained the various servers used to store and transmit the copyrighted programs that make up the Protected Channels.  (Am. Compl. ¶ 51; Riemersma Decl. ¶ 7 & Ex. A.)  Rather than ceasing their infringing activities, the Foreign Defendants have taken measures to evade copyright enforcement.  For example, they have moved their servers to different hosting companies in different countries (Am. Compl. ¶ 5) and conceal their identities by using domain registry companies that enable them to set up their websites anonymously.  (<u>See</u> Declaration of Gregory Duvall, dated Oct. 8, 2021, Dkt. No. 7-3, ¶¶ 5, 10.) The Foreign Defendants also use anonymized PayPal links to collect payments from Service Users, and when they ship set-top boxes used to access the Infringing Services to Service Users, the Foreign Defendants create false receipts with deceptive descriptions.  (Am. Compl. ¶ 46.)

B.  Statutory Damages

Under the Copyright Act, an infringing defendant may be liable for either actual damages suffered by the copyright's owner or for statutory damages. 17 U.S.C. § 504(a). Section 504(c) of the Copyright Act provides for statutory damage awards of up to $30,000 per work in cases of non-willful infringement, and up to $150,000 per work in cases of willful infringement.  "It is well-established that district courts have broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act." Nat'l Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001) (citing Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 345-46 (1998)); see also Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986).  The Amended Complaint identifies 179 separate television episodes that have been registered with the U.S. Copyright Office and that defendants have infringed.  (Am. Compl. ¶ 29 & Ex. 1).  Since each Registered Work was registered within three months after the first publication of the work (id.), infringement of each Registered Work is eligible for a separate award of statutory damages.  17 U.S.C. §§ 412(2), 504(c).

Each of the defendants has defaulted.  As a result, DISH does not know the full extent of defendants' sales and profits and has no independent means of establishing that amount with any certainty.  Courts regularly award maximum statutory damages in such situations.  See Tu v. TAD Sys. Tech. Inc., No. 08 CV 3822, 2009 WL 2905780, at *6 (E.D.N.Y. Sept. 10, 2009) (awarding statutory maximum of $150,000 per work infringed where defendants defaulted and left the court with "almost no evidence to adjudge" the amount of actual damages); Jordan Mozer & Assocs. v. Starck, No. 13 CV 1181, 2014 WL 1327960, at *2 (S.D.N.Y. Apr. 3, 2014) (deeming it "appropriate to award Plaintiff the full amount of statutory damages available" in

11

light of "the compensatory and deterrent purposes of the Copyright Act, the burden of bringing an action," and defendant's failure to appear.)  Moreover, these registered television episodes represent only a fraction of the works infringed by defendants, because there are also a large number of programs that aired on the Protected Channels, whose episodes are each copyrighted works to which DISH holds or held exclusive distribution and public performance rights and for which not all episodes have been registered with the United States Copyright Office.  (Am. Compl. ¶ 29 & Ex. 2.)

Where a defendant's infringement is flagrant, courts in the Second Circuit and elsewhere have granted plaintiffs large statutory damages awards for willful copyright infringement.  See, e.g., DISH Network L.L.C., 2022 WL 5108085, at *2-3 (maximum statutory damages award for each of 177 works); Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 631-32 (S.D.N.Y. 2011) (awarding maximum statutory damages); Nat'l Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 475, 482 (S.D.N.Y. 2001) (awarding then-maximum statutory damages of $100,000 per work); accord Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc., 658 F.3d 936, 946-47 (9th Cir. 2011) (affirming maximum statutory damages); Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1195 (9th Cir. 2001) (affirming $31.68 million statutory damages award).

The factors considered by courts to determine the amount of statutory damages in copyright infringement cases include: (i) the expenses saved and profits reaped by defendant; (ii) the revenues lost by plaintiff; (iii) the value of the copyright; (iv) the deterrent effect on other infringers besides the defendant; (v) whether the defendant's conduct was innocent or willful; (vi) whether a defendant has cooperated in providing records from which to assess the revenue from infringement; and (vii) the potential for deterring the defendant.  See Fitzgerald Publ'g, 807

F.2d at 1117.  Under the Copyright Act, enhanced statutory damages are appropriate to compensate plaintiffs and deter future willful infringement.  See Eros Entm't, Inc. v. Melody Spot, L.L.C., No. 99 CV 1157, 2005 WL 4655385, at *10 (E.D.N.Y. Oct. 11, 2005); Peer Int'l Corp. v. Luna Records, Inc., 887 F. Supp. 560, 568 (S.D.N.Y. 1995); see also N.A.S. Imp., Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992) (statutory damages are "designed to discourage wrongful conduct.") (quotation and citation omitted).  I will consider the relevant factors in turn.

　　1. Willfulness

Defendants' infringement of DISH's copyrighted television programming is unquestionably willful.  Willfulness "means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."  Nat'l Football League, 131 F. Supp. 2d at 475 (citation omitted).  Moreover, knowledge "may be inferred from the defendant's conduct," N.A.S. Import, Corp., 968 F.2d at 252, and where a defendant has defaulted, the court may infer willfulness on that ground alone.  See Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) ("Copyright infringement is deemed willful by virtue of a defendant's default."); Hounddog Prods., 826 F. Supp. 2d at 631-32 (inferring willfulness from default and awarding maximum statutory damages).

　　　　Here, DISH has shown that defendants Sharma, Vaidya, Satbir Girn, and Singh willfully engaged in the public performance of DISH's copyrighted works.  Specifically, DISH has alleged and presented evidence showing that each of these defendants actively promoted and advertised use of the Infringing Services to infringe DISH's rights, including by promoting and advertising the Infringing Services on their own websites and social media.  (Am. Compl. ¶¶ 31-

13

36.)  Defendants Sharma, Vaidya, Satbir Girn, and Singh continued these activities, along with their transmission of the Protected Channels in the United States, even after DISH sent dozens of separate cease-and-desist letters to their known email addresses.  (Riemersma Decl. ¶ 7; Am. Compl. ¶ 51.)  Their conduct was therefore willful.

The infringement committed by defendants Rajbir Girn, Farooq, and the 786 Defendants is also willful and egregious.  Like the other Foreign Defendants, defendants Rajbir Girn and Farooq continued to infringe DISH's exclusive rights in the Protected Channels and the copyrighted programs that air on those channels, even after receiving numerous cease-and-desist notices.  Moreover, the elaborate measures taken by defendants Rajbir Girn and Farooq to evade copyright enforcement further evidence their willfulness.  See, e.g., Diesel S.P.A. v. Does 1-9, No. 14 CV 4592, 2016 WL 96171, at *11 (S.D.N.Y. Jan. 8, 2016) ("[W]illfulness is demonstrated by the elaborate scheme the Defendants have employed to shield their infringing conduct from detection") (trademark claim) (citation omitted).

As to the 786 Defendants, their willfulness is further demonstrated by the fact that—even after receiving multiple cease-and-desist notices, and even after being served notice of this lawsuit, retaining counsel, and filing an answer—they continued selling and marketing the Infringing Services, and defendants 786 Enterprises, Inc. and its CEO defendant Afzal did nothing to stop or limit such infringing activity despite their authority and ability to do so.  (See Am. Compl. ¶¶ 52-53.)

In sum, DISH has established that the copyright infringement committed by each defendant was intentional and willful.

2. Deterrent Effect on Defendants and Other Infringers

Statutory damages serve an important deterrent purpose, and "the court must award an amount that will put the defendant on notice that it costs more to violate the copyright law than to obey it." Stevens v. Aeonian Press, Inc., No. 00 CV 6330, 2002 WL 31387224, at *1 (S.D.N.Y. Oct. 23, 2002) (citation omitted); see also N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., No. 89 CV 6082, 1991 WL 113283, at *4 (S.D.N.Y. June 14, 1991), aff'd, 954 F.2d 847 (2d Cir. 1992). Given the ongoing consumer demand for the Infringing Services, it is safe to assume that defendants' sales of subscriptions and set-top boxes containing the Infringing Services have been significant and have caused lost sales for DISH. (Am. Compl. ¶¶ 63, 74; Riemersma Decl. ¶ 6.) Moreover, defendants do not merely infringe a television episode or two; they pirate all of the Protected Channels and the copyrighted programs that make up those channels by illegally streaming the Infringing Services continuously, twenty-four hours a day, seven days a week. (Am. Compl. ¶¶ 2, 40, 49.) This is exactly the sort of large-scale, illegal enterprise that courts seek to deter through significant statutory damages awards. See Tu, 2009 WL 2905780, at *6 ("[A]ward of the enhanced statutory maximum is appropriate and reasonable to compensate Plaintiffs and to deter Defendants and future infringers."); Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 197-98 (S.D.N.Y. 2016) (enlarging statutory damage award to deter future conduct and in response to considerable evidence that defendants willfully infringed plaintiffs' copyrights by, among other things, disregarding multiple demand letters).

### 3. Failure to Provide Records

By their failure to appear (and in the case of the 786 Defendants, their failure to participate in the discovery process), defendants have also deprived DISH of its right to discovery of vital information, including the amount of defendants' sales, the identity of their suppliers, manufacturers, and agents, and their affiliation with other potential infringers of

15

DISH's copyrighted content.  Defendants thus have doubly harmed DISH: first by soliciting massive infringement of DISH's exclusive rights, and second by impairing DISH's ability to investigate and pursue a larger copyright protection program.  This leaves DISH with the sole available remedies of a substantial statutory damages award, and (as discussed below) a permanent injunction.

4. <u>Value of the Copyrights</u>

DISH owns exclusive rights in popular television programming originating in India and Pakistan, with consequently large audiences among Hindi- and Urdu-speaking people in the United States.  (Riemersma Decl. ¶ 3.)  This is precisely why defendants have inundated the U.S. market with set-top boxes that facilitate access in the United States to the pirated Indian and Pakistani TV programming that makes up the Protected Channels.  The value of the program episodes that aired on the Protected Channels and for which DISH holds or held exclusive distribution and public performance rights is inestimable, and defendants' infringing activities deprive DISH of the right and ability to control when, where, and how the Protected Channels and the television programs that air on those channels are distributed and performed in the United States.  (<u>Id.</u> ¶ 6.)

5. <u>Profits Reaped by Defendants</u>

By failing to appear in this action (and in the case of the 786 Defendants, failing to participate in the discovery process), defendants have deprived DISH of the opportunity for discovery into the scope of their operations. While DISH has little knowledge of the true extent of defendants' operations, the court is entitled to assume that defendants reaped significant profits and to place heavy emphasis on the willfulness and deterrence factors.  <u>See</u> <u>Rovio Entm't</u>, 97 F. Supp. 3d at 546 (awarding $100,000 per copyrighted work infringed in light of defendants'

default); <u>Rogers v. Ecolor Studio</u>, No. 11 CV 4493, 2013 WL 752256, at *7 (E.D.N.Y. Feb. 7, 2013) ("[D]ue to Defendants' default and failure to participate in pretrial discovery . . .[,] the Court's statutory damages determination [wa]s informed significantly by the imperatives of penalizing Defendants' willful infringement and deterring other potential infringers."), <u>report and recommendation adopted</u>, 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013); <u>Lyons P'ship, L.P. v. AAA Entm't Inc.</u>, No. 98 CV 475, 1999 WL 1095608, at *6 (S.D.N.Y. Dec. 3, 1999) ("[B]y virtue of their infringement and their default in this case, these defendants have made it difficult or impossible for plaintiff to develop a detailed record of the amount of the infringers' revenues derived from the infring[ement] . . . . Of necessity, then, ambiguities in the record must be read against the defendants.").  Moreover, evidence of actual damages is not necessary in awarding statutory damages.  <u>Psihoyos v. John Wiley & Sons, Inc.</u>, 748 F.3d 120, 127 (2d Cir. 2014) ("Although revenue lost is one factor to consider, we have not held that there must be a direct correlation between statutory damages and actual damages); <u>Agence France Presse v. Morel</u>, No. 10 CV 2730, 2014 WL 3963124, at *10 (S.D.N.Y. Aug 13, 2014) ("In the context of the Copyright Act, it is clear that statutory damages can be awarded even in the absence of sufficient evidence supporting actual damages.") (citation omitted).

### 6. Damages Sought in This Case

In its Amended Complaint, DISH enumerated 179 separate works that are registered with the U.S. Copyright Office and that defendants have infringed.  (Am. Compl. ¶ 29.)  Based on the above-discussed aggravating factors, and in particular the continued and comprehensive nature of the infringement, the court has discretion to award the maximum statutory damages of $150,000 per registered work infringed by defendants.  Again, because the Infringing Services illegally stream the entirety of the Protected Channels, these 179 infringed

works represent only a fraction of the works airing on the Protected Channels and of defendants' infringement of DISH's exclusive rights.  (Am. Compl. ¶¶ 2, 40, 49.)

Under these circumstances, an award of $150,000 per work—for a total of $26,850,000—is warranted and appropriate.  Notably, DISH is not seeking an award of its attorneys' fees and costs, which it is entitled to do as the prevailing party under 17 U.S.C. § 505. Nor is it seeking damages for the unregistered works set forth in Exhibit 2 to the Amended Complaint.

C.   Permanent Injunction

Finally, DISH requests entry of a permanent injunction enjoining defendants from further infringement.  The Copyright Act gives federal courts the authority to issue "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  To obtain a permanent injunction, a plaintiff must show: (1) an irreparable injury; (2) the inadequacy of remedies available at law, such as monetary damages; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); Salinger v. Colting, 607 F.3d 68, 79–80 (2d Cir. 2010).  I will address each "eBay factor" in turn.

1.  Irreparable Injury and Inadequacy of Remedies Available at Law

In Salinger, the Second Circuit recognized that, while courts must not simply presume irreparable harm in copyright cases, "courts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'" Salinger, 607 F.3d at 81 (quoting Omega Imp. Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971)).  Consequently, irreparable harm has been readily found in copyright

infringement cases.  See, e.g., Disney Enters., Inc. v. Merchant, No. 6:05 CV 1489, 2007 WL 1101110, at *6 (N.D.N.Y. Apr. 10, 2007) ("Permanent injunctions are routinely awarded in favor of copyright owners whose protected works have been misappropriated in order to serve the public's interest in upholding copyright protections.").

By publicly performing the Protected Channels without authorization from DISH, and by promoting and facilitating access to the Infringing Services, defendants cause irreparable harm to DISH in a number of ways, including by (a) directly competing with authorized subscriptions to DISH's television programming, thereby causing lost market share and price erosion for legitimate services; (b) disrupting DISH's relationships with authorized distributors in the United States; (c) depriving DISH of its exclusive rights to control the distribution and quality of the copyrighted Programming; and (d) interfering with DISH's ability to develop a lawful market for the Programming in the United States.  (Riemersma Decl. ¶ 6.)  Moreover, given defendants' default in this matter, they will likely continue to infringe plaintiff's copyrights.  See Ideavillage Prod. Corp. v. Bling Boutique Store, No. 16 CV 9039, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018) (defendant's "refusal to defend this action creates a threat that they will continue to infringe Plaintiff's trademarks unless permanently enjoined from doing so.")  These facts support a finding of irreparable harm.  See, e.g., WPIX, Inc. v. IVI, Inc., 691 F.3d 275, 285-87 (2d Cir. 2012) (infringing internet streaming of plaintiffs' TV programming constituted irreparable harm since (i) that streaming would substantially diminish the programming's value, (ii) the plaintiffs' losses were difficult to measure and monetary damages were insufficient to remedy the harms, and (iii) the defendant would have been unable to pay damages).

19

In addition, the damages recommended herein, while significant, are inadequate to prevent future piracy without injunctive relief.  See DISH Network L.L.C. v. Torres, No. 20 CV 878, 2020 WL 10318560, at *5 (M.D. Fla. Nov. 30, 2020), report and recommendation adopted, 2021 WL 2806122 (M.D. Fla. Jan. 21, 2021); DISH Network L.L.C. v. Trujillo, No. 19 CV 5, 2019 WL 5460650, at *4 (D. Nev. Sept. 27, 2019), report and recommendation adopted, 2019 WL 5448455 (D. Nev. Oct. 23, 2019); DISH Network L.L.C. v. DelVecchio, 831 F. Supp. 2d 595, 601 (W.D.N.Y. 2011).

## 2. Balance of Hardships and Public Interest

As explained above, the harm to DISH is irreparable.  On the other hand, requiring defendants to cease infringing DISH's exclusive rights in copyrighted television programming will not harm defendants because they have no legitimate interest in continuing the infringement.  See, e.g., DISH Network, L.L.C. v. Dima Furniture, Inc., No. 17 CV 3817, 2019 WL 2498224, at *7 (D. Md. June 17, 2019) ("[T]he harm that a business will suffer if it is required to cease violating the Copyright Act is not entitled to any weight in the balancing of hardships.") (citing Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983)), report and recommendation adopted, 2019 WL 5588901 (D. Md. July 12, 2019)); McGraw-Hill Glob. Educ. Holdings, LLC v. Khan, 323 F. Supp. 3d 488, 500 (S.D.N.Y. 2018) ("It is axiomatic that an infringer cannot complain about the loss of ability to offer its infringing product.") (internal quotation marks, citation and alterations omitted); Buttnugget Publ'g v. Radio Lake Placid, Inc., 807 F. Supp. 2d 100, 109 (N.D.N.Y. 2011) ("[T]o commence litigation for each future violation would be an extreme hardship, while preventing defendants from continually infringing on plaintiffs' copyrighted material is not.").  Further, "the public has a

compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming." WPIX Inc., 691 F.3d at 287.

Moreover, "[s]ince Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections . . . ." Apple Computer, 714 F.2d at 1255. I therefore respectfully recommend that a permanent injunction be issued against all defendants. See DISH Network L.L.C. v. Kumar, No. 21 CV 6730, 2022 WL 5108085, at *2-3 (S.D.N.Y. Oct. 4, 2022) (finding that defendants directly and secondarily infringed DISH's copyrights and awarding a permanent injunction plus maximum statutory damages for each of 177 registered works.)

## CONCLUSION

For the reasons stated above, I respectfully recommend that (1) plaintiff's motion for default judgment be granted against defendants Sushma Sharma, Rajesh Vaidya, Satbir Girn, Rajbir Girn, Rajkiran Singh, and Khizer Farooq as to Counts One and Two of the Amended Complaint; (2) plaintiff be awarded $26,850,000 in statutory damages from all defendants, jointly and severally; and (3) a permanent injunction be issued against all defendants enjoining them from further infringement of DISH's copyrighted works.

Plaintiff is directed to serve a copy of this report and recommendation on each defendant by first-class mail or email, and to file proof of service within three (3) days. Any objection to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. Failure to file objections in a timely manner may waive a right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       January 3, 2024